Mark J. Payne (SBN 157989)
mark.payne@troutman.com
Megan A. Mackie (SBN 325004)
megan.mackie@troutman.com
TROUTMAN PEPPER HAMILTON
SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendant
ALL AMERICAN ASPHALT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ZENDEJAS, an individual, and MIGUEL MIRAMONTES, an individual, SOLELY AS AGGRIEVED EMPLOYEE REPRESENTATIVES ON BEHALF OF ALL SIMILARLY SITUATED CURRENT AND FORMER AGGRIEVED EMPLOYEES OF DEFENDANTS,<br><br>Plaintiff,<br><br>v.<br><br>ALL AMERICAN ASPHALT, a California Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:23-cv-2504<br><br>**NOTICE OF DEFENDANT ALL AMERICAN ASPHALT'S REMOVAL OF ACTION**<br><br>[28 U.S.C. §§ 1331, 1367, 1441(a) and (c), 1446(a), (b) and (d)] |

1  **TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant All American Asphalt hereby removes to this Court the state court action described below.  This removal is based on federal question jurisdiction, 28 U.S.C. §§ 1331, 1441(a) and (c), and 1446(a), (b) and (d), for the reasons stated below.

## STATE COURT COMPLAINT

1.  On October 27, 2023, Plaintiffs Miguel Miramontes and Mario Zendejas (together "Plaintiffs") filed a Complaint against All American Asphalt in the Superior Court of the State of California for the County of Los Angeles, entitled *Mario Zendejas, Miguel Miramontes, et al. v. All American Asphalt*, Case No. 23STCV26390 (the "State Court Action"), a copy of which is attached as **Exhibit 1**.  The Complaint alleges one cause of action against All American Asphalt under the Private Attorneys General Act ("PAGA"), [Cal. Lab. Code § 2698, et seq.] ("PAGA Action").

2.  The date upon which All American Asphalt was first served with the Summons and Complaint was November 8, 2023.  (*See* Michael Farkas Declaration ("Farkas Decl.") ¶ 13.)  True and correct copies of the documents served upon All American Asphalt on November 8, 2023 (other than the Complaint already attached as Exhibit 1) are attached hereto as **Exhibit 2**.  These documents attached as Exhibit 2 include the Summons, Civil Case Cover Sheet with Certificate of Counsel, and Notice of Department Assignment for All Purposes.  All American Asphalt filed an answer to the Complaint on December 6, 2023.  A true and correct copy of All American Asphalt's answer is attached hereto as **Exhibit 3**.

## COMPLIANCE WITH REMOVAL PROCEDURES

3.  This Notice of Removal is timely filed as required by 28 U.S.C. §1446(b) because it is filed within thirty days of service of the Complaint and Summons upon All American Asphalt.  (*Murphy Bros. v. Michetti Pipe Stringing,*

*Inc.*, 526 U.S. 344, 347-48, 119 S. Ct. 1322, 1325 (1999).)

4. Promptly after filing this Notice of Removal, All American Asphalt will file a Notice of Removal of Action to Federal Court with the Clerk of the Superior Court of the State of California, County of Los Angeles, notifying it of its removal of the action to this Court.

5. Exhibits 1 and 2 constitute all process and pleadings with which All American Asphalt was served regarding the State Court Action. Exhibit 3 constitutes all pleadings that All American Asphalt filed regarding the State Court Action.

6. All American Asphalt is the only named (non-Doe) defendant in the action and, therefore, there are no other defendants to join in this Notice of Removal. On information and belief, "DOES 1 through 50" have not been identified, named, or served.

## FEDERAL QUESTION JURISDICTION

7. The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, provides federal courts with original jurisdiction, regardless of the amount in controversy or citizenship of the parties, over any lawsuits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). In the specific context of preemption under § 301 of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Section 301 "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Id*. at 1151 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)).

8. Claims that are completely preempted by Section 301 of the LMRA are treated as claims arising under federal law of which this Court has original

165713995v4

jurisdiction under 28 U.S.C. § 1331. (See *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. The complete pre-emption [doctrine] is applied primarily in cases raising claims pre-empted by § 301 of the LMRA.").)

9. Here, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because, at least in part, it arises under, and is preempted by, the LMRA. Therefore, All American Asphalt may remove this action pursuant to 28 U.S.C. § 1441(a) and (c).

## PLAINTIFFS' EMPLOYMENT WAS GOVERNED BY CBAS

8. At all relevant times, All American Asphalt was an employer employing employees in an industry affecting commerce, as defined by the LMRA, 29 U.S.C. § 142(1), *et seq*.

9. At all relevant times during which Plaintiffs were employed by All American Asphalt, Plaintiffs were represented by labor organizations and employed pursuant to collective bargaining agreements ("CBA"). (Farkas Decl. ¶¶ 3-10.)

10. AAA has been a party to a collective bargaining agreement with the Southern California District Council of Laborers and its affiliated Local Unions, which includes Laborers Local Union 652 ("652 Union"). Throughout this time, the 652 Union has served as the exclusive bargaining representative for laborers employed by AAA. (Farkas Decl. ¶ 3.)

11. Plaintiff Mario Zendejas worked as a laborer for AAA, and he was a member of the 652 Union during the timeframe of his allegations, August 25, 2022 to present ("PAGA Period"). (Farkas Decl. ¶ 5.)

12. The most recent collective bargaining agreement with the 652 Union is the Laborers 2022-2026 Master Labor Agreement, which became effective as of July 1, 2022 ("Local 652 CBA"), with a term through at least June 30, 2026. (Farkas Decl.

¶ 4, Ex. A.) Thus, the provisions of the Local 652 CBA were in effect during the PAGA Period.

13. The Local 652 CBA governs the terms and conditions of the employment relationship between Mr. Zendejas and AAA. (Farkas Decl. ¶ 6.) The Local 652 CBA expressly provides for the wages, hours of work, and working conditions of Mr. Zendejas. (Farkas Decl., Ex. A.) For example, the Local 652 CBA includes Article V on p. 21 (Material, Supplies, Equipment, Purchase of); Article XVI on p. 33 (Holidays, Payment of Wages, Meal Periods, Rest Periods (Breaks), & Heat Illness Preventative Recovery Period); Article XIX on p. 41 (Overtime, Rates); and, Appendix C, Section A on p. 63 (Grievance of Disputes, which addresses disputes concerning violations of the California Labor Code). (*Id.*)

14. AAA has been a party to a CBA with the International Union of Operating Engineers and its affiliated Local Unions, which includes Local Union No. 12 in Riverside County ("Local 12"). Throughout this time, Local 12 has served as the exclusive bargaining representative for engineers employed by AAA. (Farkas Decl. ¶ 8.)

15. Plaintiff Miguel Miramontes worked as an operating engineer for AAA and was a member of Local 12 during the PAGA Period. (Farkas Decl. ¶ 10.)

16. The most recent collective bargaining agreement with Local 12 is the 2022-2025 Master Labor Agreement, which became effective as of July 1, 2022 ("Local 12 CBA"), with a term through at least June 30, 2025. (Farkas Decl. ¶ 9, Ex. B.) Thus, the provisions of the Local 12 CBA were in effect during the alleged PAGA Period.

17. The Local 12 CBA governs the terms and conditions of the employment relationship between Mr. Miramontes and AAA. (Farkas Decl. ¶ 11.) The Local 12 CBA expressly provides for the wages, hours of work, and working conditions of Mr. Miramontes. (Farkas Decl., Ex. B.) For example, the Local 12 CBA includes Article V on p. 21 (Procedure for Settlement of Grievances and Disputes); and Article XIX

165713995v4

on p. 32 (Working Rules, including Minimum Pay, Meal Periods, Payment of Wages, and Sanitation, Safety, and Rest Periods).  (*Id.*)

18. Although Plaintiffs allege employment with All American Asphalt, they avoid mentioning that they were members of a union, and that the terms of their employment with All American Asphalt were governed by a CBA.  Instead of using the dispute resolution procedures in the CBA, Plaintiffs filed this action in state court, without mentioning the CBAs that governed their employment.  Plaintiffs cannot use such artful pleading to avoid application of the LMRA, and the Court must look outside of Plaintiffs' Complaint, to the terms of the CBA, which show that Plaintiffs' claims, as explained below, are pre-empted under section 301 of the LMRA.  (*See, e.g.*, *Young v. Anthony's Fish Grotto, Inc.*, 830 F. 2d 993, 997 (9th Cir. 1987) (court may properly look beyond face of complaint to determine whether claim is "in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction").)

19. Under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction simply by casting in state law terms a claim that can be made only under federal law.  (*See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) ("Employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement. . . In such cases, the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement.  The case may then be removed to federal court and adjudicated under the appropriate federal law.").)

20. Plaintiffs' failure to mention the CBAs is important as "federal preemption under § 301 is an essential component of federal labor policy." *Curtis v. Irwin Industries*, 913 F.3d 1146, 1151-52 (9th Cir. 2019).  As the Ninth Circuit explained, there are three reasons that preemption is essential to the labor-management relationship:

> First, a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government. Thus, a CBA is part of the continuous collective bargaining process. Second, because the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have anticipated, it calls into being a new common law—the common law of a particular industry or of a particular plant. Accordingly, the labor arbitrator is usually the appropriate adjudicator for CBA disputes because he was chosen due to the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. Third, grievance and arbitration procedures provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process.

*Curtis*, *supra* (internal quotation marks and citations omitted).

20. As demonstrated below, "evaluation of the [state-law] claim[s] is inextricably intertwined with consideration of the terms of the labor contract." (*Allis-Chalmers Corp.* 471 U.S. 202 at 213.) As such, they are completely preempted by Section 301 of the LMRA and properly removed on the grounds of federal question jurisdiction.

**THE LMRA PREEMPTS THE UNDERLYING CLAIMS IN PLAINTIFFS' PAGA ACTION**

21. To determine whether a claim is preempted under the LMRA, courts look to the underlying character of the claim itself. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc). Plaintiff's PAGA claims for civil penalties are, in part, derivative of his underlying state wage and hour claims. *Curtis*, 913 F.3d at 1150 n.3 (noting that PAGA claims depend on the derivative claims for violations of the California Labor Code); *Martinez v. Omni Hotels Mgmt. Corp.*, No. 20-CV-1924-MMA (BLM), 2021 WL 196509, at *4 (S.D. Cal. Jan. 20, 2021) ("The Court finds Plaintiffs' distinction between bringing PAGA claim for civil penalties

versus bringing a Labor Code claim for wages is irrelevant for the purposes of preemption."); *Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal. Nov. 8, 2019). Thus, if this Court has original jurisdiction over these predicate claims, it also has original jurisdiction over Plaintiffs' PAGA claim. *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 748 (S.D. Cal. 2021) (citing *Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV-20-00309-JVS-JDEx, 2020 WL 1934958, at *5 (C.D. Cal. Apr. 22, 2020) (finding PAGA claims are within a federal courts' original jurisdiction when the underlying labor claims on which the PAGA claims rely are preempted under the LMRA); *Martinez*, 2021 WL 196509, at *4 (same); *Franco*, 2019 WL 6358947, at *4 (same). "To find otherwise would allow for [the] artful pleading of PAGA claims—premised on Labor Code violations—to circumvent congressional intent regarding collective bargaining agreements and preemption." *Martinez*, 2021 WL 196509, at *4 n.3.

22. To determine whether § 301 preempts a given claim, and to ensure that its preemption mandate does not extend past its intended reach, courts apply a two-part test. *Id*. (citation omitted) ("*Burnside* test").[1] First, courts ask whether the claim involves a right existing "solely" from a CBA, rather than from state law. *Id*. Under this step, if the asserted claim is brought "purely to vindicate a right or duty created by the CBA itself," the claim is preempted. *Id*. (quoting *Schurke*, 898 F.3d at 920-21). If not, then the inquiry proceeds to step two. *Id*. At step two, courts determine if "litigating the state law claim nonetheless requires [the] interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Schurke*, 898 F.3d at 921. If this is the case, then the claim is preempted. *Id*.

23. Here, Plaintiffs base their PAGA claim on six alleged Labor Code violations: (1) Failure to Provide Rest Periods; (2) Failure to Provide Meal Periods;

---

[1] *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

- 8 -
NOTICE OF REMOVAL OF ACTION
165713995v4

(3) Failure to Provide Accurate Itemized Wage Statements; (4) Failure to Indemnify; (5) Failure to Pay All Wages; and (6) Failure to Pay All Wages Due at Termination. Plaintiffs also allege that they were not paid overtime, although they do not cite statutory support for this claim. As explained below, all of these alleged violations are preempted.

24.  **Failure to Provide Rest Periods**: Plaintiffs' rest break claim is predicated on California Labor Code section 226.7. However, section 226.7 does not apply to employees who are exempt from rest period requirements pursuant to orders of the Industrial Welfare Commission ("IWC"). Cal. Lab. Code § 226.7(e). IWC Wage Orders do not apply to workers covered by a valid CBA that "provides equivalent protection" as the wage order. Cal. Code Regs. tit. 8, § 11160(11). Here, IWC Wage Order 16 applies to Plaintiffs, and both CBAs incorporate its requirements within the agreements. Under "Breaks (Rest Periods)", the Local 652 CBA states,

> The parties to this Agreement recognize Industrial Wage Order 16 covering "On Site Construction, Mining, Drilling and Logging Industries." Any dispute or grievance arising from this Wage Order shall be processed under and in accordance with Article VI, Procedures for Settlement of Grievances and Disputes of this Agreement. The grievance process of Article VI shall be the exclusive method for resolving all alleged violations on this Wage Order and the time limitations of Article VI shall apply. Wherever the Wage Order refers to collective bargaining agreements, this Master Labor Agreement shall be deemed to satisfy all of the requirements for treatment as a qualified collective bargaining agreement.

(Farkas Decl., Ex. A, Article XVI D., p. 33-34.)

Similarly, the Local 12 CBA states,

> The parties to this Agreement recognize Industrial Wage Order 16-2001 covering "On Site Construction, Mining, Drilling, and Logging Industries". Any dispute or grievance arising from this Wage Order shall be processed under and in accordance with Article V, Procedure for Settlement of Grievances and Disputes of this Agreement.

(Farkas Decl., Ex. B, Article XIX L., p. 40.)

Because the CBAs provide for equivalent protection (indeed, the exact same protection), the Wage Order does not apply. Accordingly, Plaintiffs' rest break claims depend on the terms of the CBAs, not the Labor Code, and are preempted.

25. **Failure to Provide Meal Periods**: Plaintiffs' meal period claim is predicated on California Labor Code section 512. However, Section 512(e) exempts employees in a construction occupation from the meal period requirements of 512(a) if they are covered by a CBA that meets certain requirements.

a. Specifically, to meet the exemption, (1) the employee must be covered by a valid collective bargaining agreement and (2) the valid collective bargaining agreement must expressly provide for the wages, hours of work, and working conditions of employees, and expressly provide for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. Cal. Lab. Code § 512(e).

b. Here, both employees are covered by valid CBAs (see above) and both CBAs meet these requirements. *See* Local 12 CBA Article V on p. 21 (Procedure for Settlement of Grievances and Disputes); and Article XIX on p. 32 (Working Rules, including Minimum Pay, Meal Periods, Payment of Wages, and Sanitation, Safety, and Rest Periods); Local 652 CBA Article V on p. 21 (Material, Supplies, Equipment, Purchase of); Article XVI on p. 33 (Holidays, Payment of Wages, Meal Periods, Rest Periods (Breaks), & Heat Illness Preventative Recovery Period); Article XIX on p. 41 (Overtime, Rates); and, Appendix C, Section A on p. 63 (Grievance of Disputes, which

addresses disputes concerning violations of the California Labor Code).

As a result, Plaintiffs' right to meal periods exists solely because of the CBAs, and this claim is preempted. *See Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 161892, at *4 (N.D. Cal. Jan. 18, 2022) (where CBA satisfies Section 512(e), employee rights to meal periods is conveyed solely by CBA, and preemption is proper); *Parker v. Cherne Contracting Corp.*, No. 18-CV-01912-HSG, 2019 WL 359989, at *5 (N.D. Cal. Jan. 29, 2019) ("Plaintiff is exempted from her ... meal period claims brought under ... IWC Wage Order 16-2001 ... Plaintiff therefore has asserted no rights that exist independently of the [collective bargaining agreement], and these claims are preempted."). Section 301 preemption, therefore, creates federal subject matter jurisdiction. *Id*. at *2 .

26.     **Failure to Indemnify**: Plaintiffs allege that they were required to purchase materials and items necessary to complete the work as required by Defendants, including uniforms and shoes, and that All American Asphalt failed to indemnify them for these expenses in violation of California Labor Code § 2802.  (Compl. ¶ 39.) First, both CBAs discuss expense reimbursement, and even if they did not, this claim requires interpretation of the CBA to determine what is reasonable and necessary as a job expense.  The Local 652 CBA provides,

> The Contractor shall be required to furnish goggles and/or hard hats where needed. When employees are required to work outside in the rain or snow, they shall be furnished rain coats, rain hats and boots. Employees working in or handling cement or concrete shall be furnished rubber boots and gloves. Employees required to work in mud, slush or water shall be furnished boots and other necessary waterproof clothing. The employee shall return all such clothing of the Contractor in the same condition as received, subject to reasonable wear and tear. Such equipment shall be sanitized before reissue. The employee shall sign for receipt of such protective clothing and on signed authorization the reasonable value of such protective clothing may be deducted from

the employee's paycheck. Upon return of the protective clothing, the employee shall be reimbursed in the amount of the deduction.

(Farkas Decl., Ex. A, Article XVI D., p. 33-34.)[2]

Plaintiffs contend that uniforms and shoes are reimbursable, and All American Asphalt disputes that contention. Thus, the Court will need to interpret the CBAs to adjudicate this claim, including whether the parties to the CBA intended to include the uniforms and shoes Plaintiff refers to as the kind of "waterproof clothing" and "boots" referenced in the CBA as reimbursable. As a result, this claim is preempted by the LMRA.

27. **Failure to Pay All Wages**: Plaintiffs also allege that All American Asphalt violated Labor Code section 204 because "Plaintiffs and the Aggrieved Employees routinely worked periods of time before and after their scheduled workdays" and were not compensated for that time. (Compl. ¶ 28.) Section 204 establishes statutory requirements for the timely payment of wages, with a default requirement that all wages be paid on a semi-monthly basis. Cal. Lab. Code § 204(a). However, California Labor Code section 204(c) provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees."

Several district courts have extended the reasoning of *Curtis* to conclude that "[section] 204(c) operates similarly to the statute discussed in Curtis," and as a result, "where a CBA provides for a different pay arrangement from that which exists under state law, a covered employee's right to timely payment 'exists solely as a result of the CBA.'" *See Landy*, 2019 WL 6245525, at *4) (quoting *Curtis*, 913 F.3d at 1154) (internal quotation marks omitted); *Bradford v. Pro. Tech. Sec. Servs. Inc.* (Protech), No. CV 20-02242-WHO, 2020 WL 2747767, at *4–5 (N.D. Cal. May 27, 2020) ("Because the CBA here meets the statutory exemption requirements provided in

---

[2] The Local 12 CBA has similar clauses. *See* p. 40, 56.

section 204(c), Bradford's PAGA claim for violation of section 204 is preempted under the first step of the Burnside test."); *Bartlett v. All Am. Asphalt*, No. ED CV 20-1449-JGB (KKx), 2020 WL 6118818, at *7 (C.D. Cal. Oct. 16, 2020) (same); *Tolentino v. Gillig*, LLC, No. CV 20-7427-MMC, 2021 WL 121193, at *3 (N.D. Cal. 2021) (same); *Schwanke v. Minim Prods., Inc.*, No. CV 22-00111-SVW (JPRx), 2021 WL 4924772, at *5 (C.D. Cal. May 24, 2021) (same).

Here, both CBAs provide for an alternative pay arrangement. *See* Local 652 CBA Article XVI B, (Payment of Wages), p. 32; Local 12 CBA Article XIX K. (Payment of Wages), p. 39. Accordingly, this claim is preempted. *See Ariola v. Raytheon CA Techs. Corp.*, No. CV234664MWFAGRX, 2023 WL 5764296, at *8 (C.D. Cal. Sept. 6, 2023) (determining same).

28. **Failure to Pay Overtime**: Plaintiffs claim that they are owed "unpaid and illegally calculated overtime compensation" in the factual allegations of their Complaint. (Compl. ¶ 5.) However, they fail to expound on this allegation or allege a violation of any state statute or common law principle in the Complaint. Not alleging a state law claim alone shows that any overtime claim is a right given by the CBA and is thus, pre-empted.

But, even if Plaintiffs had cited a violation under state law (Labor Code §514), their claim would still be preempted. Section 514 provides that the California overtime rules (Labor Code § 510) "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code. § 514.

Here, the relevant CBAs meet the Labor Code § 514 requirements. *See* Local 12 CBA Article XIX on p. 32 (Working Rules, including Minimum Pay, Meal Periods, Payment of Wages, and Sanitation, Safety, and Rest Periods); Subsection W

(Overtime) on p. 61; Local 652 CBA Article XVI on p. 33 (Holidays, Payment of Wages, Meal Periods, Rest Periods (Breaks), & Heat Illness Preventative Recovery Period); Article XIX on p. 41 (Overtime, Rates). Accordingly, any state-law overtime claim is preempted. *See Curtis*, 913 F.3d at 1155 (employee's overtime claim was controlled by a qualifying CBA and therefore preempted by Section 301 of the LMRA); *Rodriguez v. USF Reddaway Inc.*, No. 2:22-CV-00210-TLN-DB, 2022 WL 18012518, at *3 (E.D. Cal. Dec. 30, 2022) (PAGA-overtime related claims preempted where Section 514 met).

29.  **Failure to Provide Accurate Itemized Wage Statements**: This claim is derivative of the above claims, and is thus, preempted along with them.

30.  **Failure to Pay All Wages Due at Termination**: This claim is derivative of the above claims, and is thus, preempted along with them.

31.  For these reasons, Section 301 of the LMRA completely preempts all of the underlying alleged violations in Plaintiffs' PAGA Action.

## SUPPLEMENTAL JURISDICTION

32.  Should the Court deem that any of Plaintiffs' underlying claims to the PAGA Action are not pre-empted, this Court has supplemental jurisdiction over such claims, if any, because they are part of the same case and controversy, and they are removable pursuant to 28 U.S.C. § 1367 and 1441(c).

## CONCLUSION

33.  If the Court is inclined to remand this action, All American Asphalt respectfully requests that the Court issue an order to show cause why the case should not be remanded, providing the parties with an opportunity to present briefing and argument prior to any possible remand. This action is appropriate because remand is not subject to appellate review, and because this notice of removal contains only "a short and plain statement of the grounds for removal," as required by Section 1446(a).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

| | |
|---|---|
| Dated: December 7, 2023 | TROUTMAN PEPPER HAMILTON SANDERS LLP |
| | By: /s/ Mark J. Payne |
| | Mark J. Payne |
| | Megan A. Mackie |
| | Attorneys for Defendant |
| | ALL AMERICAN ASPHALT |

- 15 -
NOTICE OF REMOVAL OF ACTION

165713995v4